FRED S. THOMPSON,

Appellant from Decree of Judge of Probate, In Re Estate of
Henrietta T. Nickels.

Waldo.    Opinion November 24, 1917.

*Jurisdiction of Probate Court.    Decrees of Probate Courts on all matters within its
jurisdiction.    Effect of valid appeal from Probate Court.    Questions open
upon appeal from the ruling of the Supreme Court.    Appeal from
findings of fact.    Doctrine of dependent relative revoca-
tion.    Evidence necessary to give Supreme Court
of United States jurisdiction of a writ of
error to the State Court.    Wills.*

On exceptions to the dismissal of a petition to revoke and vacate a decree of the
Probate Court, allowing the will of Henrietta T. Nickels it is

*Held:*

1.  The finding of facts by the Justice presiding in the Supreme Court of Probate
are conclusive and not to be reviewed by the Law Court if the record shows any
evidence to support them.    It is the finding of facts without evidence that can
be challenged by exceptions.

2.  The finding of the presiding Justice that the petitioner's signature to the
original petition for the probate of this will had not been obtained by fraud,
misrepresentation and concealment is amply sustained by the evidence.

3.  The finding that the petitioner here had not withdrawn as a petitioner for the
probate of the will, had not become a remonstrant, and had not been so recog-
nized, is also supported by the record.

4.  The Probate Court had full jurisdiction of the parties and of the cause, and
the weight and sufficiency of the evidence in sustaining the will in question
were matters to be determined by that court.    The weakness or the strength
of that evidence did not affect the jurisdiction and the Supreme Court of Pro-
bate properly excluded that evidence on this petition to vacate the decree.    It
would be admissible in a hearing on appeal from the decree but not on a petition
to revoke the decree itself for lack of jurisdiction.

5.  The petitioner has not been deprived of property without "due process of
law" in violation of the fifth and fourteenth amendments of the Federal Con-
stitution.

Petition to revoke and vacate decree of Probate Court, Waldo County, Maine; petitioner having been a party to proceedings asking that said decree be made. To the ruling of Justice at Supreme Court of Probate, petitioner filed exceptions. Judgment in accordance with opinion.

Case stated in opinion.

*Eugene C. Upton, George F. Gould,* and *Miss Aurelia E. Hanson,* of Malden, Mass., for appellant.

*William P. Whitehouse, Henry W. Swasey, Robert F. Dunton,* and *Robert T. Whitehouse,* for appellees.

SITTING: CORNISH, C. J., SPEAR, KING, HANSON, MADIGAN, JJ.

CORNISH, C. J. This is a petition to revoke and vacate a decree of the Probate Court of Waldo County made on May 12, 1914, admitting to probate and allowing the will of Henrietta T. Nickels dated November 9, 1911.

A brief history of this somewhat protracted litigation is necessary to a proper conception of the case. Mrs. Henrietta T. Nickels, a resident of Searsport, died on February 28, 1914. She had made a will dated November 9, 1911, which was executed in legal and proper form and which for the sake of convenience we designate as the original will. On November 26, 1913, she signed another will but as this instrument had only two attesting witnesses instead of three as required by statute, it was invalid. R. S., (1903), Chap. 76, Sec. 1 (R. S., 1916, Chap. 79, Sec. 1). A codicil thereto dated November 29, 1913, was invalid for the same reason.

Under these circumstances, a petition was presented to the Judge of Probate asking for the admission to probate and the allowance of the original will. This petition was signed by all the heirs at law including Fred S. Thompson the petitioner in the pending proceedings, and alleged that "said deceased legally executed a will which existed at the time of her death and which has never been revoked; that said will was, on or about the 29th day of November, 1913, destroyed by the testatrix purely and only for the purpose of making some new disposition or alteration as shown by the drafts filed herewith, but because of failure of due execution of said drafts such disposition or alteration cannot take effect; that said will cannot be obtained,

although all reasonable diligence has been used to find and obtain it, and that the instrument hereunto annexed is a true copy of said will as aforesaid."

Upon this petition notice was duly ordered returnable May 12, 1914, and on that day after hearing duly had a decree was entered approving and allowing this original will. From this decision Fred S. Thompson appealed to the Supreme Court of Probate, assigning two reasons of appeal.

First, that the original will was revoked, cancelled, annulled and destroyed by the testatrix in her lifetime.

Second, that said decree was not made or signed by the Judge of Probate at the time or place of holding said term of court, to wit, on the twelfth day of May, 1914, at Belfast, but subsequently at Unity on the twentieth day of May, 1914, after said term of court had been adjourned.

This second reason was not pressed.

The Supreme Court of Probate heard this appeal at the September term, 1914, and after ruling pro forma that Fred S. Thompson, the appellant, was an aggrieved person within the meaning of R. S., (1903), Chap. 65, Sec. 23, ordered, adjudged and decreed,

First, that the decree of the Judge of Probate be affirmed.

Second, that the original will be approved and allowed as the due and lawful will.

Third, that the subsequent instruments be disallowed and rejected.

Exceptions to the rulings of the Supreme Court of Probate were then taken by the appellant. These were overruled by the Law Court and the decree of the Probate Court affirmed. *Thompson, App't,* 114 Maine, 338, announced January 3, 1916. The ground of the decision was that as Thompson was one of the petitioners asking for the probate of the will, he could not be deemed an "aggrieved person" within the meaning of R. S., (1903), Chap. 65, Sec. 28, when it was the granting of his own petition from which he was attempting to appeal and he had received what he had asked for.

Subsequent to this decision Mr. Thompson filed this petition in the Probate Court to revoke and vacate the decree of May 12, 1914, allowing the original will. The alleged grounds of revocation will be considered later. After due notice and hearing, the Judge of Probate on August 8, 1916, entered a decree denying and dismissing this petition. From this decree Mr. Thompson took an appeal to the

Supreme Court of Probate, alleging twenty-seven distinct reasons of appeal. These reiterate the petitioner's contentions in varying forms of expression, but the substance of them is, lack of jurisdiction in the Probate Court to make the original decree, lack of power in the court to apply the doctrine of dependent relative revocation, lack of evidence on which to base the invocation of that doctrine if otherwise legally applicable, the exclusion of all evidence touching the proceedings at the hearing of May 12, 1914, in the Probate Court except on the question of fraud connected with the signing of the original petition by Mr. Thompson, and finally that the petitioner had been deprived of his property without due process of law. This appeal was fully heard by the Supreme Court of Probate and decision was rendered on December 4, 1916, dismissing the appeal and affirming the decree of the Probate Court.

The case is now before the Law Court upon the appellant's exceptions to this order of dismissal and to the rulings of the Supreme Court of Probate upon certain requests presented by the petitioner. Those requests were seventy-seven in number. Two were subsequently withdrawn, one was granted, and seventy-four were refused. Such has been the protracted course traveled by this estate since May, 1914. However complicated that course may seem, the issues presented at this time are plain and not difficult of solution.

Our first inquiry should be as to the legal status of this case.

It is familiar law that the Probate Court is without common law jurisdiction, and is limited in its powers to those directly conferred by statute and to those necessarily incident to the execution of such powers. But it is equally well settled that its decrees in matters within its jurisdiction and within its statute-given authority are conclusive unless vacated or revoked. *Snow* v. *Russell*, 93 Maine, 362-376. Using the term jurisdiction in its strictly appropriate sense it must appear not only that the Probate Court had jurisdiction over the parties and the cause but also that all the proceedings prescribed by law have been rigidly complied with. *Taber* v. *Douglass*, 101 Maine, 363. All these tests have been met here. Mrs. Nickels was a resident of Waldo County at the time of her decease. The probating of her will was within the exclusive jurisdiction of the Probate Court of that County and all the statutory requirements connected therewith were strictly observed. The petition showing the jurisdictional facts, the order and proof of notice and the decree of May 12,

1914, admitting the original will to probate were all in proper form. That decree therefore, unless revoked or vacated, stands and is conclusive.

An appeal from that decree was taken by this petitioner to the Supreme Court of Probate and thence on exceptions to the Law Court. But the Law Court held that Mr. Thompson who undertook to appeal was not entitled to do so, and the appeal was therefore null and void. *Thompson, App't*, 114 Maine, 338, already cited. In effect the Law Court dismissed the appeal, without passing on the merits of the case and the decree of the Probate Court stood as if not appealed from. *Cleveland* v. *Quilty*, 128 Mass., 579. A valid appeal vacates a valid decree ipso facto; but a void appeal gives the Appellate Court no jurisdiction and leaves the original decree in full force and virtue. *Milliken* v. *Morey*, 85 Maine, 340. Hence it is that the mandate in *Thompson, App't*, 114 Maine, 338, disregarded the intervening decree of the Supreme Court of Probate, overruled the exceptions and affirmed the decree of the Probate Court. This affirmation was really surplusage. It added nothing to the existing decree of the Probate Court, because the Law Court, like the Supreme Court of Probate, was without jurisdiction to entertain the appeal, since it was presented by a party not aggrieved by the original decree. Nor did the addition of that affirmation subtract anything. The original decree of the Probate Court stood unrevoked. The mandate of the Law Court neither strengthened it nor weakened it, and that original decree still stands unappealed from in the eye of the law, as the judgment of the Probate Court of Waldo County, and is conclusive, unless it can be successfully attacked in the pending proceeding.

Such is the status of this cause, and we now come to the pending petition to vacate this decree. Brought in the Probate Court and denied there, appealed to the Supreme Court of Probate and denied there, it is now before the Law Court on exceptions to the rulings of the Supreme Court of Probate. Under these exceptions the only questions open for determination in this court are questions of law. The findings of fact by the Justice presiding in the Supreme Court of Probate are conclusive and not to be reviewed by the Law Court if the record shows any evidence to support them. It is the finding of facts without evidence that can be challenged by exceptions. *Eacott, App't*, 95 Maine, 522; *Costello* v. *Tighe*, 103 Maine, 324; *Palmer's Appeal*, 110 Maine, 441; *Gower, App't*, 113 Maine, 156.

This brings us to a consideration of the grounds of attack which the petitioner arrays against the validity of the original decree of the Probate Court allowing the will of May 9, 1911.

These are condensed and succinctly set forth by the petitioner in his bill of exceptions and we will consider them seriatim.

First—"Because his signature to the petition to allow said instrument had been obtained by fraud and misrepresentation and concealment."

This refers to the petitioner's contention that he was led to believe that two foster children of Mrs. Nickels had been legally adopted and were therefore her heirs at law; that afterwards he learned that they had not been legally adopted and therefore were not her heirs; and had he been informed of that fact earlier, he would not have asked for the probate of the will, as his share as an heir at law would have exceeded his interest as legatee under the will.

This contention presented purely a question of fact and was passed upon by the Justice presiding adversely to the petitioner's contention. Under the rule before stated, his finding is conclusive and is not reviewable here if there is any evidence to substantiate it. A careful study of the record reveals abundant evidence that there existed neither fraud, misrepresentation nor concealment, which led to the signing of the petition for probate by the petitioner. He was one of seven petitioners. The petition stated truly and fully the names of all the heirs at law of the deceased who were also the petitioners, and it did not contain the names of these foster children. Moreover at a conference held in Portland on March 24, 1914 at the office of Mr. Henry W. Swasey, who had been Mrs. Nickels' confidential adviser, had drawn her will of 1911 and was acting as counsel in the probate of the will, but who has since deceased, the entire situation was discussed in the presence of the petitioner and full opportunity was given him for complete and exact information. The conduct of Mr. Swasey has been attacked by the petitioner, but such attempted reflections are entirely unsupported by the evidence. The record discloses that throughout the whole proceedings Mr. Swasey acted with entire frankness, fairness and a high sense of professional honor in every respect. Nor did any other person seek to mislead or deceive the petitioner. This ground of assault is without merit.

Second, "Because he had withdrawn as petitioner and become a remonstrant and had been so recognized."

This was also a question of fact for the presiding Justice and was found to lack support. It would be valueless to detail the evidence warranting the finding. Not only was there some evidence to substantiate it but it was ample and convincing. The petitioner takes nothing by this exception.

Third—The third alleged reason for revocation is: "Because the Court had exceeded its jurisdiction and had no jurisdiction to allow such instrument; That it was not proved ever to have been her will;

That if she had executed a will, it had admittedly been destroyed by her, and no evidence was introduced before the court or was before the court in May, 1914, that she destroyed it in the belief that she had executed a later legal one; or that it had continued unrevoked as a will up to the date of her death, and that, therefore, there had been a failure of due process of law, and a violation of the fifth and fourteenth amendments of the Constitution of the United States."

Under this assignment the petitioner does not attempt to attack the jurisdiction of the Probate Court by showing that certain statutory prerequisites were not complied with as in *Taber* v. *Douglass*, 101 Maine, 363, where the legality of adoption proceedings was at issue, and although the decree stated that "the written consent required by law has been given thereto," the court held that this was contrary to the truth as imported by the entire record, and that the record itself showed the court to be without jurisdiction. The decree was therefore vacated on petition. Here the record contains all the prerequisites and clothes the court with complete jurisdiction.

Nor does the petitioner set up fraud in the probating of the will as in *Merrill Trust Company, App't*, v. *Hartford*, 104 Maine, 566, where it was proved that the supposed will was not in fact signed by the supposed testator nor by some person for him at his request and in his presence, was not in fact subscribed in his presence by three credible attesting witnesses not beneficially interested nor was probated without legal evidence of such facts. No charge of such fraud is made here. These two cases upon which the petitioner relies apparently with great confidence are clearly distinguishable from the case at bar.

The basis of the attack here and the testimony offered to substantiate it are in substance that the evidence before the Judge of Probate was insufficient to warrant his finding that the testatrix had

destroyed the first will in the belief that she had executed a later legal one, and that she had not destroyed the first animo revocandi if the subsequent instrument should prove to be invalid.

The presiding Justice properly excluded this evidence. The sufficiency of the evidence in support of the original will and its evidentiary force was a matter for the Judge of Probate to determine. Its strength or its weakness was for him and did not affect the jurisdiction of the court itself. The petitioner fails to note the distinction here involved. To adopt the language of the court in *Rockland* v. *Hurricane Isle*, 106 Maine, 172, "The fallacy in the argument is in the misuse of the words, jurisdiction and jurisdictional facts. It confounds facts giving jurisdiction with evidentiary facts after jurisdiction has been conferred." The evidence which the petitioner sought to introduce would be admissible in a hearing on an appeal from the decree but not on a petition to vacate the decree. Its exclusion by the presiding Justice therefore was not error.

It may not be inappropriate to add however, although it is in strictness beside the issue, that in our opinion the decision of the Judge of Probate was in accordance with the law and the evidence. The doctrine of dependent relative revocation is firmly established. Mr. Jarman states it as follows: "When the act of destruction is connected with the making of another will so as fairly to raise the inference that the testator meant the revocation of the old to depend upon the efficacy of the new disposition intended to be substituted, such will be the legal effect of the transaction; and therefore if the will intended to be substituted is inoperative from defect of attestation or any other cause, the revocation fails also and the original will remains in force." 1 Jarman Wills, Vol. 1, page 148. See *In re Knappen*, 75 Vt., 146; *Gardiner* v. *Gardiner*, 65 N. H. 230, and especially *Strong's Appeal*, 79 Conn., 123.

The evidence warranted the Judge of Probate in drawing the inference that the testatrix "meant the revocation of the old to depend upon the efficacy of the new disposition intended to be substituted." The testimony of Mr. Dunton, the attorney who drew the new will, giving his conversations with Mrs. Nickels, taken in connection with all the other circumstances in the case, lead straight to that inference.

The original will of 1911 had been lost or destroyed, but Mr. Swasey had made and kept an examined copy of the instrument and this was presented for probate in place of the original. The statute

permits this.    R. S., 1903, Chap. 66, Sec. 9 (R. S., 1916, Chap. 68, Sec. 9).    "A will may continue to exist, though the paper it was written upon is destroyed."    *Thompson, App't,* 114 Maine, 338, 340, citing *Rich* v. *Gilkey,* 73 Maine, 595.    The authenticity of the copy was abundantly proved and the witnesses to that will were produced and their testimony given, one orally and two by deposition.    The will of 1911 was in our opinion established by plenary evidence as the last will and testament of Mrs. Nickels.

It is unnecessary to discuss specifically the seventy-four requests for rulings which were refused.    They all are crystallized in the three grounds of attack already considered, and the principles involved in all, so far as material, have been sufficiently covered.

We find no error in their refusal.

FEDERAL QUESTION.

Finally the petitioner claims that he has been deprived of property without "due process of law" in violation of the fifth and fourteenth amendments of the constitution of the United States.

An exact and comprehensive definition of the term "due process" of law as applicable to all possible cases and circumstances has not been successfully attempted.    Its application to the precise question involved in each case has been deemed sufficient.    In general terms however it is understood to mean "law in the regular course of administration through Courts of justice, according to those rules and forms which have been established 'for the protection of private rights;" or "law according to the settled course of judicial proceedings or in accordance with fundamental principles of justice enforceable in the usual modes established in the administration of government with respect to kindred matters."    6 R. C. L., 434.    See *Eames* v. *Savage,* 77 Maine, 212.    As stated in *ex parte Wall,* 107 U. S., 265, it is "that kind of procedure which is suitable and proper to the nature of cases and sanctioned by the established usages and customs of the Courts."

Such due process of law, or law of the land, has been measured out to the petitioner here and we have searched in vain for any infringement of his constitutional rights.    A will duly executed by a citizen of this State has been duly and legally admitted to probate in this State in accordance with those rules and forms which have been established in such proceedings.    An attempt to appeal failed through no other fault than that of the petitioner.    But that failure was also

in accordance with the same established rules. From the beginning to the end, the petitioner's constitutional rights have been carefully safeguarded.

Moreover, according to the testimony of the petitioner's own witness, who was also acting as associate counsel, no Federal question was presented to the Judge of Probate at the hearing on this petition in July, 1916. According to the findings of the Justice presiding in the Supreme Court of Probate no Federal question was entertained or considered by him. In order to give the Supreme Court of the United States jurisdiction of a writ of error to the State Court, it must appear not only that a Federal question was presented for decision by the State Court but that its decision was necessary to the determination of the cause and that it was decided adversely to the party claiming a right under the Federal Laws or Constitution or that the judgment as rendered could not have been given without deciding it. *Pierce* v. *Somerset Railway*, 171 U. S., 641, (88 Maine, 86).

The case at bar obviously falls within this rule.

*Exceptions overruled.*
*Decree of Supreme Court of*
*Probate affirmed with costs.*